Roman Melikov
Pro Se
9550 W. Sahara Ave., #3022
Las Vegas, NV 89117
Phone: 831-600-6369
Email: rmelikov74@gmail.com

FILED
MAY 27 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV21  4074

ROMAN MELIKOV,

           Plaintiff,

vs.

GHILOTTI BROS., INC.

           Defendant

Case No.:

**COMPLAINT WITH JURY DEMAND**

## NATURE OF CASE

1. Plaintiff Roman Melikov brings this action against Ghilotti Bros., Inc., seeking both compensatory and punitive damages.

2. The Defendant is a construction company founded in 1914 that specializes in many areas of expertise, such as concrete installation in sidewalks and streets, demolition, equipment rental, excavation, road paving, and underground utilities installation among many additional tasks. Furthermore, the construction company has a strong financial balance sheet.

- 1 -
COMPLAINT

3. On July 16th, 2019, Plaintiff Roman Melikov was visiting from Las Vegas, Nevada and driving north through Golden Gate Park in San Francisco on a section of road called Crossover Drive when he suddenly encountered a CENTER LANE CLOSED AHEAD traffic sign.

4. Plaintiff Roman Melikov, after reading the warning on the traffic sign and citing his personal knowledge that traffic signs usually appear 200-400 feet before their intended area of notice given the speed limit of the road, imagined that the center lane of the sharp right descending curve up ahead must hold the concrete barriers or other lane closure objects that the traffic sign referenced.

5. Plaintiff Roman Melikov chose and positioned his 2012 Jeep Liberty 4x4 Sport into the left lane as it opened up on the sharp right descending curve, thereby giving himself as much visibility ahead of himself as possible.

6. Much to Plaintiff Roman Melikov's surprise as he began the sharp right descending curve in the left lane, the concrete barriers that the CENTER LANE CLOSED AHEAD traffic sign earlier referenced were not in the center lane, but rather in the left lane. The road was now called Park Presidio Bypass.

7. With only a split second in decision making available as the left lane was quickly disappearing into the concrete barriers that were placed in a diagonal angle across the lane, Plaintiff Roman Melikov decided to ram the Lyft driver next to him in the center lane in order to make room for his Jeep so that he could avoid a direct head-on collision into the concrete barriers ahead. Had Plaintiff Roman Melikov not acted in this manner, the accident could have truly caused a catastrophic crash as the concrete barriers were not very tall and given their angle, would most likely have acted as a launch ramp that would propel Plaintiff Roman Melikov's Jeep over the barriers and over the short center divide into oncoming traffic that could have been stationary due to a traffic light at the opposite side of the scene of the accident, resulting in an over 4 ton vehicle colliding or landing on several vehicles heading in the opposite direction.

8. Plaintiff Roman Melikov's Jeep became lodged between the Lyft driver and the concrete barriers, allowing the Jeep to dramatically slow down in speed. The Jeep's left front tire axle finally

- 2 -
COMPLAINT

gave out from the tire rubbing against the concrete barriers and the Jeep flipped onto its right side when it was traveling around 10 miles per hour.

9. Plaintiff Roman Melikov, suffering a minor concussion from the accident, climbed out of his Jeep through the driver side door and refused medical treatment at the scene.

10. Upon investigation by Plaintiff Roman Melikov, Defendant Ghilotti Bros., Inc. was operating at the site of the accident, which was the beginning of the construction site, under a permit with the San Francisco Department of Public Works.

11. Plaintiff Roman Melikov's investigation further revealed that Defendant Ghilotti Bros., Inc. was the sole owner of the concrete barriers that Plaintiff Roman Melikov crashed his Jeep into while traveling north on a section of road called Park Presidio Bypass. In addition, Ghilotti Bros., Inc. was also solely responsible for the placement of those concrete barriers on Park Presidio Bypass and the placement of traffic signs on both Crossover Drive and Park Presidio Bypass.

## JURISDICTION AND VENUE

12. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

13. Under 28 U.S.C. § 1391(b) and (c), venue is proper in this Court because the Defendant resides, is found, and regularly conducts business in this District, and a substantial part of the events giving rise to the claims in this action and a substantial amount of property that is the subject of the action is situated in this District.

## PARTIES

14. Plaintiff Roman Melikov, a resident of the State of Nevada.

15. Defendant Ghilotti Bros., Inc., incorporated in the State of California, with its headquarters located in San Rafael, CA.

## SUBSTANTIVE ALLEGATIONS

- 3 -
COMPLAINT

16. Defendant Ghilotti Bros., Inc. had a legal duty to Plaintiff Roman Melikov and all other motorists who utilize Crossover Drive and Park Presidio Bypass to adequately warn them of the construction that Ghilotti Bros., Inc. had commenced upon when operating under a permit from the San Francisco Department of Public Works and possibly under a contract with Caltrans since this section of road in San Francisco is a state highway (SR 1).

17. Ghilotti Bros., Inc. failed in executing that duty by placing the wrong traffic sign along Crossover Drive.  The CENTER LANE CLOSED AHEAD traffic sign warned motorists that the lane closed ahead was the center lane and not the left lane.  In reality, the opposite situation was true.  The left lane ahead was closed and the center lane ahead was open.

18. Ghilotti Bros., Inc. further failed to place additional traffic signs along Crossover Drive warning of the concrete barriers ahead in the left lane.  The only other warning for the construction ahead, including the concrete barriers in the left lane, was at the actual beginning of the concrete barriers.  The concrete barriers had a traffic sign next to them that stated, "LANE CLOSED." However, given that the concrete barriers were placed at the beginning of Park Presidio Bypass, any motorist who read the incorrect traffic sign stating "CENTER LANE CLOSED AHEAD" and had chosen the same route as Plaintiff Roman Melikov would already be well into the sharp right descending curve before noticing the concrete barriers or the traffic sign next to them ahead.  Given the upward angle of Crossover Drive heading north and the descending sharp right curve when Crossover Drive merges into the beginning of Park Presidio Bypass, any motorist would only have a single second to notice the concrete barriers or the traffic sign next to them warning of a closed lane and properly respond.  The MUTCD provides guidance on the placement of traffic signs, stating:

> "Placement of a traffic control device should be within the road user's view so that adequate visibility is provided.  To aid in conveying the proper meaning, the traffic control device should be appropriately positioned with respect to the location, object, or situation to which it applies.  The location and legibility of the traffic control device should be such that a road user has adequate time to make the proper response in both day and night conditions." Federal Highway

1  Administration, Manual on Uniform Traffic Control Devices for Streets and Highways, 2009
2  Edition, 2 (2012).
3  Therefore, the placement of the "LANE CLOSED" traffic sign by Ghilotti Bros., Inc. next to the
4  concrete barriers was effectively useless in preventing an accident from occurring because it gave
5  motorists no reasonable time to properly respond.
6  19. Because Ghilotti Bros., Inc. chose such a dangerous location to place the concrete barriers in
7  the first place, given the nature of the terrain both approaching the construction site and at the
8  construction site, the beginning of the construction site being the scene of the accident, Ghilotti
9  Bros., Inc. should have placed numerous traffic signs along Crossover Drive warning of the
10 presence of the concrete barriers ahead in the left lane.  However, Ghilotti Bros., Inc. had not placed
11 a single traffic sign along Crossover Drive aside from the one incorrect traffic sign stating
12 "CENTER LANE CLOSED AHEAD."  Ghilotti Bros., Inc. absolutely failed in their duty to warn
13 the Plaintiff or any other motorists of the danger they themselves created ahead.
14 20. Ghilotti Bros., Inc. had caused this accident and is 100% liable. This was a completely
15 preventable accident had Ghilotti Bros., Inc. exercised proper procedures in warning motorists of a
16 closed lane ahead.  Such proper procedures include, but are not limited to, making sure that the
17 traffic sign warning of the closed center lane ahead accurately displayed the correct information
18 about the location of the construction ahead, placing additional signs on both sides of the road to
19 make sure that motorists were well aware that the left lane was closed ahead, and placing the
20 concrete barriers in an area that allowed motorists ample time to see them and react accordingly
21 even if they had not read any of the numerous warning signs that should have been present during
22 the duration of the construction as Ghilotti Bros., Inc. focused on completing the requirements of
23 the permit.  Had Ghilotti Bros., Inc. followed any of these proper procedures as specified in the
24 MUTCD, the accident would not have occurred.
25 21. Ghilotti Bros., Inc. caused significant damage to Plaintiff's Jeep.  Plaintiff's Jeep is located
26 in San Francisco and Plaintiff is not obligated to repair the Jeep in Las Vegas, NV.  The difference
27 in cost to repair the Jeep in San Francisco and Las Vegas is three to four times greater in hourly
28 labor rates.

# COUNT I

## NEGLIGENCE

22. Plaintiff incorporates every allegation set forth in paragraphs 1-17 and paragraph 21 as if fully set forth herein.

23. Ghilotti Bros., Inc. failed to exercise the proper standard of care necessary at their construction site as they sought to complete the construction necessary under their permit with San Francisco's Department of Public Works.  A reasonable person would make sure that the traffic sign that had stated "CENTER LANE CLOSED AHEAD" was actually displaying the correct information to passing motorists, including Plaintiff Roman Melikov, about the construction site ahead.

24. The Manual on Uniform Traffic Control Devices (MUTCD) is approved by the Federal Highway Administrator as the National Standard in accordance with Title 23 U.S. Code, Sections 109(d), 114(a), 217, 315, and 402(a), 23 CFR 655, and 49 CFR 1.48(b)(8), 1.48(b)(33), and 1.48(c)(2).

25. The MUTCD specifically states that the CENTER LANE CLOSED AHEAD traffic sign "should be used in advance of that point where work occupies the center lane(s) and approaching motor vehicle traffic is directed to the right or left of the work zone in the center lane."  Federal Highway Administration, Manual on Uniform Traffic Control Devices for Streets and Highways, 2009 Edition, 592 (2012).  Instead, Ghilotti Bros., Inc. used the CENTER LANE CLOSED AHEAD traffic sign to warn about lane closure in the left lane ahead.

26. In committing the act aforementioned, Defendant Ghilotti Bros., Inc. is guilty of negligence and Plaintiff Roman Melikov is entitled to recover compensatory damages.

# COUNT II

## WILLFUL AND WANTON MISCONDUCT

27. Plaintiff incorporates every allegation set forth above as if fully set forth herein.

28. Given the nature of the terrain both approaching the construction site and at the construction site, such as the ascending climb up Crossover Drive towards the construction site and the sharp

1  right descending curve as Crossover Drive merges into Park Presidio Bypass passing by the
2  beginning of the construction site, Ghilotti Bros., Inc should have further placed additional traffic
3  signs along Crossover Drive to warn motorists of the dangerous location of the concrete barriers
4  ahead that could not be visible until a motorist was well into the sharp right descending curve and
5  would only have a second to notice the concrete barriers and properly respond.

6      29. Ghilotti Bros., Inc. decided to only have one other traffic sign aside from the incorrect traffic
7  sign they placed before the beginning of the construction site.  This second traffic sign that stated
8  "LANE CLOSED" was placed next to the concrete barriers at the beginning of the construction site,
9  which was also the scene of the accident.  Ghilotti Bros., Inc should have realized that this second
10 traffic sign that stated "LANE CLOSED", based on the terrain both towards the construction site
11 and at the beginning of the construction site, could not be visible within any reasonable time for
12 motorists to safely react.  The MUTCD specifically states that the LANE CLOSED traffic sign
13 "shall be used in advance of that point where one or more through lanes of a multi-lane roadway are
14 closed." Federal Highway Administration, Manual on Uniform Traffic Control Devices for Streets
15 and Highways, 2009 Edition, 591 (2012).  Therefore, Defendant Ghilotti Bros., Inc. once again
16 failed to properly warn motorists of the dangerous concrete barriers located in the left lane because
17 the placement of the LANE CLOSED traffic sign was not placed in advance of the concrete barriers
18 as the MUTCD requires, but rather at the beginning of the concrete barriers, and offered motorists
19 no reasonable time to properly react to its instructions due to its poor placement that did not take
20 into account the surrounding terrain.

21     30. The MUTCD describes warning signs as traffic signs that "call attention to unexpected
22 conditions on or adjacent to a highway, street, or private roads open to public travel and to
23 situations that might not be readily apparent to road users" and specifically outlines that "warning
24 signs shall be based on an engineering study or on an engineering judgment."  Federal Highway
25 Administration, Manual on Uniform Traffic Control Devices for Streets and Highways, 2009
26 Edition, 103 (2012).  Ghilotti Bros., Inc. utilized only two signs that warned of the concrete barriers
27 ahead, the CENTER LAND CLOSED AHEAD traffic sign and the LANE CLOSED traffic sign,
28 and neither of those traffic signs fall under the classification of being warning signs as specified by

the MUTCD. Furthermore, Ghilotti Bros, Inc. did not utilize an engineering study or an engineering judgment when placing either traffic sign. Evidence of this failure by Ghilotti Bros., Inc. is identified through the requirement necessary to meet adequate Perception-Response Time (PRT) for the LANE CLOSED traffic sign. The MUTCD identifies PRT as "the time needed for detection, recognition, decision, and reaction." Federal Highway Administration, Manual on Uniform Traffic Control Devices for Streets and Highways, 2009 Edition, 108 (2012). The MUTCD in Table 2C-4 further provides guidelines for advance placement of warning signs and none of the conditions illustrated for proper warning sign distances provide a passing motorist an initial PRT of 1 second and a sign legibility limit of less than 100 feet. Federal Highway Administration, Manual on Uniform Traffic Control Devices for Streets and Highways, 2009 Edition, 108 (2012). However, such conditions were present with the placement of the LANE CLOSED traffic sign. Lastly, the failure of Ghilotti Bros., Inc. to properly account for required PRT and legibility limits for the LANE CLOSED traffic sign underscores the above claim that Ghilotti Bros., Inc. needed additional traffic signs along Crossover Drive to properly warn passing motorists.

31. As with the LANE CLOSED traffic sign, the concrete barriers that were next to the LANE CLOSED traffic sign themselves also provided a PRT of 1 second. This additional error by Ghilotti Bros., Inc. further endangered passing motorists because the passing motorists were given no adequate PRT to properly respond to the presence of the concrete barriers in the left lane.

32. The Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit states that punitive damages may be awarded if the defendant's conduct that harmed the plaintiff was "malicious, oppressive or in reckless disregard of the plaintiff's rights." (2017 Edition, 83).

33. In committing the acts aforementioned, Defendant Ghilotti Bros., Inc.'s conduct was carried out in reckless disregard of Plaintiff Roman Melikov's rights. Plaintiff Roman Melikov is therefore entitled to recover compensatory and punitive damages.

**REQUEST FOR RELIEF**

34. WHEREFORE, Plaintiff Roman Melikov demands judgment against Defendant Ghilotti Bros., Inc. for compensatory damages, under Count I, and compensatory and punitive damages, under Count II, in the amount of $1,000,000.00.

35. Plaintiff Roman Melikov further demands judgment against Defendant Ghilotti Bros., Inc. for the costs of suit incurred herein and for any other relief this Court deems just and proper.

Respectfully submitted May 22, 2021.

_____
Roman Melikov
In Pro Per

9550 W. Sahara Ave., #3022
Las Vegas, NV 89117

831-600-6369